UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LYLE D. NANCE,**<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**WILLIE BONDS,** *et al.*,<br><br>　　　　Defendants. | Case No. 17–cv–00679–ESK–SAK<br><br><br>**OPINION** |

**KIEL, U.S.D.J.**

　　**THIS MATTER** comes before the Court on defendants Willie Bonds, Johnathan Gramp, and Dianna Sheehan's motion for summary judgment (Motion) (ECF No. 109.) The Motion is unopposed. For the following reasons, I will grant the Motion and enter judgment in defendants' favor.

　　**I.　PROCEDURAL HISTORY**

　　Plaintiff filed a *pro se* complaint on January 31, 2017 alleging various violations of his rights under 42 U.S.C. § 1983 (Complaint) while he was incarcerated at South Woods State Prison (South Woods) and East Jersey State Prison (East Jersey). (ECF No. 1 (Compl.).) Plaintiff also filed a separate action in the Newark vicinage about his confinement in East Jersey. *See Nance v. Nogan*, No. 17–cv–00672. He filed a motion to consolidate cases. (ECF No. 14.) District Judge Noel L. Hillman denied the motion in this case and stayed consideration of the Complaint while the consolidation motion was pending in Newark. (ECF No. 15.)

　　On December 21, 2020, Judge Hillman lifted the stay and allowed the Complaint to proceed in part. (ECF No. 17.) Judge Hillman dismissed plaintiff's claims regarding the alleged deprivation of an effective grievance procedure, deprivation of property, sexual harassment, and conspiracy to

deprive plaintiff of his constitutional rights. (*Id. passim*). He permitted plaintiff's claims that South Woods administrator Willie Bonds, assistant superintendent Johnathan Gramp, and mailroom supervisor Dianna Sheehan retaliated against plaintiff for filing grievances to proceed. (*Id.* ¶ 15.)

## II. FACTS

### A. Allegations in Complaint

Plaintiff was transferred to South Woods from East Jersey on March 10, 2015. (Compl. ¶ 19.) Plaintiff went to pick up his personal property items, but a South Woods mailroom officer refused to give him items that were considered to be prohibited items at South Woods even though plaintiff had been permitted to have them at East Jersey. (*Id.* ¶ 23.) Plaintiff filed a prison inquiry on March 23, 2015 with Sheehan asking for an accounting of his property that he had packed up in East Jersey. (*Id.* ¶ 24.) Prison officials rejected the inquiry because he "initialed his first name … ." (*Id.*) Gramp removed plaintiff from the NJSTEP[1] program on March 26, 2015 and assigned plaintiff a job that paid significantly less than plaintiff's job at East Jersey. (*Id.* ¶ 25.) Plaintiff sent the New Jersey Department of Corrections Ombudsman a letter detailing his difficulties with South Woods. (*Id.* ¶ 34.)

Plaintiff filed a grievance on May 4, 2015 about the items that were being withheld from him. (*Id.* ¶ 36.) The grievance was rejected and returned to plaintiff with the instruction to file a property claim. (*Id.*) On May 12, 2015, plaintiff sent a letter to Sheehan telling her that his father would pick up the property and requesting the return of his surge protector. (*Id.* ¶ 38.) She did

---

[1] "The New Jersey Scholarship and Transformative Education in Prisons (NJSTEP) initiative is an association of higher education institutions in New Jersey that works in partnership with the State of New Jersey Department of Corrections and New Jersey State Parole Board to provide higher education courses toward a college degree for students while they are incarcerated, and to assist in their transition to college life upon release from prison." (ECF No. 109–1 p. 8.)

<span>

not respond. (*Id.*) Plaintiff received a letter from the Ombudsman that stated Sheehan "was 'aware of the situation with [p]laintiff's property, and was 'unsure' why his surge protector was rejected." (*Id.* ¶ 39.) Sheehan also claimed that plaintiff could not have his college books and calculator "because he was 'not currently active in the college program at [South Woods.]'" (*Id.*) She also did not permit plaintiff to have his eyeglasses "because they were metal frames when in fact, all three were plastic" or his sunglasses "because they were not prescription, when in fact they were and transitional lenses." (*Id.*) Plaintiff got his surge protector back on May 15, 2015. (*Id.* ¶40.)

Plaintiff obtained permission to have his father collect his property as well as an extension of time to collect the property. (*Id.* ¶ 41.) He wrote to Sheehan asking that his items be mailed to his father because his father was ill. (*Id.* ¶ 42.) She did not respond. (*Id.*) Plaintiff wrote to Bonds asking to be transferred back to East Jersey and for help getting his property back, but Bonds did not respond either. (*Id.* ¶ 45.)

On May 28, 2015, plaintiff was given "gang minimum status" and denied "full minimum status." (*Id.* ¶ 48.) Plaintiff sent a letter to Bonds objecting to his transfer from East Jersey, classification status, removal from the NJSTEP program, and the lack of response to his inquires. (*Id.* ¶ 49.) He filed a formal grievance on June 3, 2015. (*Id.* ¶ 50.) Bonds rejected plaintiff's grievance on June 25, 2015. (*Id.* ¶ 55.)

On June 15, 2015, Sheehan disposed of plaintiff's property. (*Id.* ¶ 52.) Plaintiff filed a grievance on June 18, 2015 and sent a property claim to Bonds on June 30, 2015. (*Id.* ¶¶ 53, 56.) He also sent Bonds a list of 49 items valued at $ 3,357.08 that were missing. (*Id.* ¶ 56.) Despite paying to send the letter via certified mail, the post office never received the mail. (*Id.*)

Plaintiff was taken to the hospital for a dislocated finger on July 10, 2015. (*Id.* ¶ 58.) When he returned to the prison, he was taken to South Woods's

extended care unit. (*Id.*) His property was taken to the unit's storage room, and he discovered that some items had been stolen or broken when he went to retrieve his property on July 17, 2015. (*Id.* ¶ 59.) Plaintiff mailed another complaint to Bonds on August 5, 2015 containing receipts for his discarded property as well as for the damaged and stolen property that had been in the storage room. (*Id.* ¶ 64.) Sheehan charged $5.53 to have the mail sent by certified mail. (*Id.* ¶ 65.) Plaintiff filed an inquiry asking for the date that his items arrived in the storage room,[2] but staff returned the inquiry and gave plaintiff directions on how to file a property claim "as if having knowledge that an act of maleficence had occurred." (*Id.* ¶ 68.) He filed another grievance seeking compensation for money that Sheehan deducted from his account for postage that he did not request. (*Id.* ¶ 72.) Bonds denied plaintiff's property claim on September 14, 2015. (*Id.* ¶ 76.)

Bonds wrote to plaintiff on September 29, 2015 stating that he could not tell plaintiff why he had been transferred from East Jersey. (*Id.* ¶ 78.) Bonds denied plaintiff's request to be transferred back to East Jersey. (*Id.* ¶ 79.) Bonds also acknowledged that South Woods had charged inmates to file inquiries on the prison kiosks. (*Id.* ¶ 80.) Plaintiff states this continued until July 15, 2016. (*Id.* ¶ 81.)

On December 7, 2015, plaintiff was directed to pack up his property because he was being transferred to Northern State Prison (Northern State). (*Id.* ¶ 88.) He packed 10 boxes to be transferred with him. (*Id.*) The transfer was cancelled, but Sheehan "allowed" plaintiff's items to be shipped to Northern State on December 9, 2015. (*Id.* ¶ 89.) Plaintiff filed a grievance claiming this had been done to retaliate against him. (*Id.*)

---

[2] Plaintiff later learned through a different inquiry that staff did not know the specific date but that his property should have arrived the same day plaintiff went to the extended care unit, *i.e.*, on July 10, 2015. (Compl. ¶ 70.)

Plaintiff received some of his property on December 22, 2015. (*Id.* ¶ 91.) He filed a grievance against Sheehan on December 24, 2015 for an "unreasonable delay of [six] additional days before [he] received the remaining items minus his 'missing' Grand Jury and Post Conviction Relief transcripts." (*Id.*) He filed an inquiry on December 29, 2015 asking why it had taken 17 days to send out his word processor for repair. (*Id.* ¶ 92.) Plaintiff filed another grievance regarding his missing transcripts on January 7, 2016 and another inquiry about his word processor on January 13, 2016. (*Id.* ¶¶ 94, 95.)

### B.   **Defendants' Statement of Facts**[3]

Plaintiff received the Inmate Handbook when he arrived at South Woods in March 2015. (ECF No. 109–20 ¶ 8.) It states that "non-permissible property shall be removed by a family member or friend within [30] days after written notification." (*Id.*) It also states that a "correctional facility shall hold non-permissible for property for up to [60] days and that the correctional facility shall not be liable for non-permissible property held longer than [60] days." (*Id.* ¶ 9.) Claims of lost, damaged, or destroyed property had to be filed within 15 days of discovery. (*Id.* ¶ 10.) "The Institutional Classification Committee will make all job assignments. The job needs of the institution have priority." (*Id.* ¶ 12 (internal quotation marks omitted).) The handbook

---

[3] Plaintiff did not submit opposition to the Motion when it was originally filed. (ECF No. 110.) On January 23, 2024, Judge Hillman denied plaintiff's request to stay the proceedings until plaintiff was released from prison but, "in light of [p]laintiff's *pro se* status and the preference that matters be decided on the merits," briefly extended the time for plaintiff to file opposition to the Motion to February 16, 2024. (ECF No. 114 ¶¶ 9, 10.) Judge Hillman warned plaintiff that the Motion "will be considered unopposed if [p]laintiff does not submit his papers by that date." (*Id.*) Plaintiff did not submit any opposition by the time set by Judge Hillman. I denied plaintiff's May 17, 2024 request for a further extension because he had not asserted any facts that would warrant another extension. (ECF No. 117.) Accordingly, the Motion is considered unopposed and defendants' statement of material of facts is "deemed undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1(a).

states that an inmate may request to be enrolled in educational programs but acceptance is not automatic. (*Id.* ¶ 13.)

According to Bonds, plaintiff was transferred to South Woods for administrative reasons. (*Id.* ¶ 16.) A prisoner could be transferred within the New Jersey Department of Corrections for several reasons. (*Id.* ¶ 17.) Bonds was not involved with plaintiff's transfer to South Woods beforehand and "would not expect anyone to tell him about [plaintiff's] history." (*Id.* ¶ 18.) He states that all inmates that were "mistakenly charged a fee were reimbursed." (*Id.* ¶ 19.)

Bonds sent plaintiff a memorandum on September 14, 2015 responding to plaintiff's property claim. (*Id.* ¶ 20.) He told plaintiff that plaintiff had been notified on April 7, 2015 that he had 60 days to have a friend or family member retrieve his property. (*Id.* ¶ 21.) Bonds also told plaintiff that his property had been disposed of on June 15, 2015 because no one had claimed the property for plaintiff. (*Id.* ¶ 22.) Plaintiff admitted at his deposition that he had received the memorandum. (*Id.* ¶ 23.) He also admitted that Bonds had never indicated that he was aware of plaintiff's grievances at East Jersey. (*Id.* ¶ 14.) Bonds also never said anything to plaintiff about retaliating against him. (*Id.* ¶ 15.)

Gramp stated that he would have only learned about plaintiff's transfer from East Jersey from the daily movement sheet and that he did not know "anything about [plaintiff] that distinguished him from other general population prisoners." (*Id.* ¶ 28.) Gramp denied that he retaliated against plaintiff when plaintiff was not put into the NJSTEP program, which was just getting started at South Woods. (*Id.* pp. 29, 30.) Plaintiff's "prior participation in the program at East Jersey State Prison placed him at a higher education level." (*Id.* ¶ 30.) Plaintiff started NJSTEP at South Woods on June 25, 2015. (*Id.* ¶ 31.) Gramp told plaintiff "that due to his accumulated

6

amount of points, [plaintiff's] status was being changed to 'gang minimum status' which was a better status than [plaintiff's] current status and it meant [plaintiff] would be afforded more liberties." (*Id.* ¶ 33.)

According to Sheehan, plaintiff's property arrived at South Woods between March 12, 2015 and March 19, 2015. (ECF No. 109–20 ¶ 34.) She never spoke with plaintiff about any retaliation. (*Id.* ¶ 36.) Sheehan did not know about plaintiff's grievances at East Jersey as her first contact with plaintiff was through his March 23, 2015 property grievance. (*Id.* ¶¶ 37, 38.) Some of his property was found after he filed the grievance. (*Id.* ¶ 39.) Plaintiff received multiple notices from South Woods staff about the need to claim his property. (*Id.* ¶ 40.) Sheehan responded to plaintiff's property grievance on June 25, 2015, stating that she had given plaintiff an additional 30 days beyond the 60 days set forth in the handbook to have someone retrieve his property. (*Id.* ¶¶ 40, 41, 42.) Plaintiff failed to have anyone pick up the property. (*Id.* ¶¶ 44, 46.) Sheehan acknowledged that plaintiff had been overcharged for mail and had contacted the business office to have them refund plaintiff. (*Id.* ¶ 50.)

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party has the initial burden of showing the basis for its motion and that there is no genuine dispute of material fact. *See Celotex Corp.*, 477

U.S. at 323. The moving party must cite specific materials in the record. Fed. R. Civ. P. 56(c)(1)(A). "[T]he burden on the moving party may be discharged by 'showing' … that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the moving party has satisfied its burden, the non–moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. "While the evidence that the non–moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Hugh v. Butler Cnty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Anderson*, 477 U.S. at 251).

## IV. DISCUSSION

Defendants move for summary judgment on plaintiff's claims that they retaliated against him because he filed grievances and inquiries at East Jersey and South Woods. To prove his retaliation claim, plaintiff must show that: "(1) he was engaged in constitutionally protected conduct, (2) he suffered some adverse action at the hands of prison officials, and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision' to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (cleaned up). "Once the prisoner has made his *prima facie* case, the burden shifts to the defendant to prove by a preponderance of the evidence that it 'would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.'" *Oliver v. Roquet*, 858 F.3d 180, 190 (3d Cir. 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). Defendants concede that filing prison grievances and inquiries are constitutionally protected activities. (ECF No. 109–1 p. 11.) In addition to asserting that plaintiff has not satisfied his burden of proof, defendants also argue they are entitled to qualified immunity. (*Id.* p. 20.)

After reviewing the evidence submitted by defendants, I find that they have shown that plaintiff cannot establish that his constitutionally protected activity was a substantial or motivating factor in any actions they took. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

### A.     Gramp[4]

Plaintiff alleges Gramp did not permit him to continue the NJSTEP program after transferring to South Woods and assigned plaintiff to the lowest paying job. (Compl. ¶ 122.) He also alleges that Gramp changed his classification to "gang minimum status" to punish him for filing grievances at East Jersey. (*Id.* ¶ 48.)

Plaintiff testified in his deposition that he could not say why Gramp "did what he did" and could "only tell you the results of what happened to [him]." (ECF No. 109–4 p. 21.) He relies on an "underlying belief … that [he] was going to be punished … for [his] activities at [East Jersey] once [he] got to [South Woods]" and an assumption that Gramp knew plaintiff was being transferred to South Woods as Gramp was part of the administrative staff. (*Id.* pp. 21, 33.) Gramp never made a statement to plaintiff that indicated Gramp was motivated by plaintiff's grievance activity at East Jersey. (*Id.* p. 23.) Plaintiff theorizes that Gramp set his classification as "gang minimum status" in order to keep him from participating in NJSTEP, but he admitted that Gramp never said anything to him that would support this theory. (*Id.* p. 54.) Plaintiff also admitted that classification status is determined by an objective score

---

[4] The copy of Gramp's responses to plaintiff's interrogatories that was filed with the Motion is unsigned. (ECF No. 109–6 p. 13.) "The evidentiary value of this declaration is drastically reduced because it is unsigned." *Arnold v. Gilmore*, No. 2:16–cv–01299, 2019 WL 430503, at *7 n. 7 (W.D. Pa. Feb. 4, 2019). I will not consider this document as part of the Motion. *See Bastista v. U.S. Dep't of Just.*, 129 F. App'x 724, 725 (3d Cir. 2005) ("We will not consider the unsigned declaration that the Government submitted to show that Bastista failed to exhaust his administrative remedies.")

calculation based on the individual prisoner and their behavior and that even prisoners with the highest custody status are permitted to participate in NJSTEP. (*Id.* pp. 51, 52.)

After considering the undisputed record and evidence, I find that plaintiff cannot establish Gramp was motivated by plaintiff's East Jersey grievances. To the extent plaintiff relies on the short period of time between his transfer to South Woods and Gramp's actions to prove causation, he needs "to show … that the decision maker had knowledge of the protected activity." *Moore v. City of Philadelphia*, 461 F.3d 331, 351 (3d Cir. 2006), *as amended* (Sept. 13, 2006). "It is not reasonable for a factfinder to infer that [defendant's] reaction was motivated by an intent to retaliate for conduct of which the … decision maker was not aware." *Id.* Plaintiff has not supplied this evidence, citing only his "underlying belief" that retaliation played a role. "A non–moving party must point to concrete evidence in the record which supports each essential element of his case." *Herbert v. Newton Mem'l Hosp.*, 933 F. Supp. 1222, 1229 (D.N.J. 1996), *aff'd*, 116 F.3d 468 (3d Cir. 1997). " [A] party cannot rely upon self–serving conclusions, unsupported by specific facts in the record." *Id.* Gramp has shown that plaintiff cannot meet his burden on proof for his retaliation claim; therefore, Gramp is entitled to judgment as a matter of law.

### B. Bonds

Plaintiff alleges Bonds "personally direct[ed] or acquiesce[ed] to the inexplicable transfer" to Northern State out of retaliation and to prevent him from filing further grievances. (Compl. ¶ 113.) He also claims Bonds allowed his property to be destroyed. (*Id.* ¶ 117.)

According to Bonds, prisoners within the New Jersey Department of Corrections may be transferred between state prisons for a number of reasons. (ECF No. 109–5 ¶ 2.) Plaintiff was transferred for administrative reasons, the specifics of which "cannot be shared with the inmate population" as it concerns

the security and operation of the facilities.  (*Id.* ¶¶ 2, 4.)  Bonds stated that he usually would not know about a prisoner's disciplinary history when they arrived at South Woods, especially if they had no prior disciplinary history like plaintiff. (*Id.*  ¶ 3.)  Bonds denied authorizing or acquiescing to the destruction of plaintiff's property and denied that his "express written or verbal authorization" was required to destroy property.  (*Id.* ¶¶ 8, 17.)  Generally speaking, "[p]roperty issues were handled by mailroom staff."  (*Id.* ¶ 7.) Bonds had no recollection of receiving a letter from plaintiff that requested help in retrieving plaintiff's property or about plaintiff's father trying to make arrangements to pick up the property.  (*Id.* ¶¶ 10, 11.)  Bonds certified that he did not arrange to have plaintiff transferred to Northern State out of retaliation.  (*Id.* ¶ 22.)  Bonds states that all inmates who were mistakenly charged fees for copies of inquiries or grievances were refunded.  (*Id.* ¶ 23.)

Bonds has presented evidence that he was not aware of plaintiff's history of grievances at East Jersey and that he was not involved in the destruction of plaintiff's property or plaintiff's transfer to Northern State.  He also has submitted evidence that the unauthorized charges to plaintiff's account were the result of a prison-wide problem, which was rectified, and not a targeted action against plaintiff.  Plaintiff has not produced any evidence to contradict Bonds's sworn statements.

Plaintiff testified at his deposition that he had no personal knowledge that Bonds knew about his East Jersey grievances, stating only that he was "sure [Bonds] was privy to [his history] … ."  (ECF No. 109–4 pp. 71, 72.)  Plaintiff admitted that he never had a direct conversation with Bonds about anything. (*Id.* p. 80.)  "'[A]n inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.' Inferences must flow directly from admissible evidence."  *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) (quoting *Robertson v. Allied Signal, Inc.*, 914

11

F.2d 360, 382 n. 12 (3d Cir. 1990)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Bonds cannot have been motivated by plaintiff's East Jersey grievances if he was not aware of them. *Moore v. City of Philadelphia*, 461 F.3d 331, 351 (3d Cir. 2006), *as amended* (Sept. 13, 2006).

Plaintiff also has not established causation between his grievances filed at South Woods and the cancelled transfer to Northern State. "When a plaintiff relies solely on circumstantial evidence of temporal proximity, the time between the protected conduct and the adverse action is often measured in days rather than weeks or months." *Owens v. Deb*, No. 4:22–cv–01571, 2024 WL 387675, at *5 (M.D. Pa. Jan. 31, 2024) (citing *Conard v. Pennsylvania State Police*, 902 F.3d 178, 184 (3d Cir. 2018)). Plaintiff filed a state tort claim about the June 15 destruction his property on August 31 and September 8, 2015. (Compl. ¶¶ 73, 74.) Plaintiff submitted a prison property claim to Bonds on June 30, 2015, (*Id.* ¶ 56), which Bonds denied on September 14, 2015, (ECF No. 109–8 p. 1). Plaintiff was not almost transferred to Northern State until December 9. (ECF No. 109–4 p. 62.) A difference of nearly three months between plaintiff's property grievances and the cancelled transfer is not unusually suggestive timing. "Where the temporal proximity is not so close as to be unduly suggestive, the appropriate test is timing plus other evidence." *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016) (cleaned up). Plaintiff has not produced "other evidence" of retaliation. Moreover, the undisputed evidence in the record does not support a reasonable inference of a pattern of antagonism. Accordingly, I find that Bonds has shown that plaintiff cannot meet his burden on proof for his retaliation claim; therefore, Bonds is entitled to judgment as a matter of law.

### C. Sheehan

Plaintiff alleges that Sheehan caused the destruction of his property and improperly charged him fees in order to retaliate against him for his East Jersey and South Woods grievances. (Compl. ¶ 138.)

Sheehan certified that plaintiff's property arrived at South Woods from East Jersey sometime between March 12, 2015 and March 19, 2015. (ECF No. 109–7 ¶ 2.) Plaintiff would have been provided "an inventory slip from both [East Jersey] and [South Woods] which would have contained an itemized list of his property." (*Id.* ¶ 4.) Plaintiff filed a grievance on March 23 asking to inventory his property from East Jersey. (ECF No. 109–4 p. 86.) He sent another letter to Sheehan on March 26 stating that certain transcripts and legal briefs were missing. (*Id.* p. 88.) Plaintiff received some of his property as a result of his grievances. (*Id.* p. 91.)

On April 7, plaintiff was informed that he had 60 days to pick up his items. (ECF No. 109–8 p. 1.) Plaintiff's father spoke with Sheehan and told her that he would come pick up the items on May 26, so Sheehan extended the time for plaintiff to retrieve his items. (ECF No. 109–10.) Plaintiff's father never arrived to pick up the items and Sheehan did not hear anything else from plaintiff, so plaintiff's items were destroyed on June 15 pursuant to South Woods's policy. (*Id*; ECF No. 109–9 p. 98.) Sheehan denied that she disposed of plaintiff's property in order to retaliate against him for filing grievances and complaints. (ECF No. 109–7 ¶ 17.) She further denied purposely sending plaintiff's property to Northern State after the transfer was cancelled or overcharging him to retaliate against him. (*Id.* ¶¶ 22, 25.)

Once again, there is nothing but speculation supporting plaintiff's retaliation claim against Sheehan. "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in

13

the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) ("[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."). "[C]ausation, like any other fact, can be established from the evidence gleaned from the record as a whole." *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016). There is no evidence that Sheehan was aware of any grievances filed at East Jersey, and plaintiff never had a direct conversation with Sheehan about anything. (ECF No. 109–4 p. 80.)

Plaintiff's deposition testimony is full of speculation and assumptions about Sheehan's motivations, but he has not submitted any affirmative evidence from which a reasonable factfinder could rule in his favor. He argued during his deposition that Sheehan did not follow the relevant policy about notifying him of the specific date his property would be destroyed, (*see, e.g.*, ECF No. 109–4 pp. 94, 98, 99, 103), but plaintiff received a letter from the Ombudsman on May 14, 2015 stating that "someone must pick-up the items in question by May 19th." (ECF No. 109–12.) The letter from assistant superintendent Christopher Cline dated May 18, 2015 only confirms that plaintiff was to arrange to have his father pick up the property. (ECF No. 109-13.) Sheehan held onto plaintiff's property for another 28 days; Cline's letter did not require Sheehan to hold the property indefinitely. After the considering the record as a whole, there is insufficient to create a genuine issue of material fact that Sheehan had a retaliatory motive for disposing of plaintiff's property.

Alternatively, Sheehan has shown by a preponderance of the evidence that she would have made the same decision to destroy the property regardless of whether plaintiff had filed grievances. *Oliver v. Roquet*, 858 F.3d 180, 190 (3d Cir. 2017). South Woods policy only requires the mailroom to hold onto excess

property for a maximum of 60 days, after which time the prison is no longer responsible for any property. (ECF No. 109–9 p. 98.) "The property will be disposed of if it is not removed by a specific date." (*Id.*) Plaintiff received notices from the mailroom on March 19 and March 26 that he had unauthorized items in the South Woods property room. (ECF No. 109–10.) On April 7, plaintiff was informed that he had 60 days to pick up his items. (ECF No. 109–8 p. 1.) Plaintiff received a letter from the Ombudsman on May 14, 2015 stating that "someone must pick-up the items in question by May 19th." (ECF No. 109–12.) Sheehan gave plaintiff extra time beyond this date because plaintiff's father said he would come to pick everything up on May 26. (ECF No. 109–10.) In total, plaintiff's property was stored for 97 days after his arrival at South Woods and 69 days after receiving the March 31, 2015 property memo. (ECF No. 109–8 p. 1.) This was longer than South Woods was required to store his property, supporting Sheehan's assertion that she would have disposed of the property as part of normal policy and procedure even in the absence of any grievances from plaintiff. (ECF No. 109–7 ¶ 16.)

Plaintiff has not presented any evidence from which a reasonable jury could conclude that his grievances were a substantial or motivating factor for defendants' actions. Therefore, I will grant the motion for summary judgment.[5]

### D. Doe Defendants

I will also dismiss plaintiff's claims against the still unnamed Doe defendants. (Compl. ¶ 16.) Fact discovery closed May 31, 2023. (ECF No. 83.) Despite the close of discovery, plaintiff has failed to identify these

---

[5] As summary judgment will be granted in favor of Gramp, Bonds, and Sheehan, it is unnecessary to address their qualified immunity argument beyond noting that the evidence viewed in the light most favorable to plaintiff does not show that defendants violated a federal statutory or constitutional right.

unnamed defendants. Because plaintiff has failed to identify them and because the time for doing so has since past, I must dismiss them pursuant to Federal Rule of Civil Procedure 21, which allows a court to "on motion or on its own, … at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21; *see also Blakeslee v. Clinton County*, 336 F. App'x 248, 250 (3d Cir. 2009) (affirming dismissal of Doe defendants pursuant to Rule 21). "Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified. If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed." *Id.* Plaintiff has had more than enough time to allow him to identify the individual unnamed defendants and thereafter to amend the complaint, but he has failed to do so.

## V. CONCLUSION

For the reasons stated above, I will grant defendants' unopposed motion for summary judgment. (ECF No. 109.) An appropriate Order accompanies this Opinion.

                                           */s/ Edward S. Kiel*
                                         EDWARD S. KIEL
                                         UNITED STATES DISTRICT JUDGE

Dated: October 17, 2024